**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 12-2996
_____

TRUE BLUE AUCTIONS;
WAYNE A. DREIBELBIS, JR.,

Appellants

v.

ROBERT SCOTT FOSTER;
KEVIN D. LEWIS, OFFICERS OF THE POLICE DEPARTMENT
OF THE CITY OF FRANKLIN
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(No. 1-11-CV-00242)
District Judge: Honorable Maurice B. Cohill, Jr.

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
May 16, 2013

_____

Before: SMITH, FISHER, and CHAGARES, Circuit Judges.

(Filed: June 10, 2013)

_____

OPINION
_____

CHAGARES, Circuit Judge.

True Blue Auctions, LLC ("True Blue") and Wayne A. Dreibelbis, Jr. appeal the District Court's dismissal of their complaint filed under 42 U.S.C. § 1983 against two officers of the City of Franklin Police Department. For the reasons explained herein, we will affirm.

I.

We write solely for the parties and will therefore recount only those facts that are essential to our disposition. The amended complaint alleges that on October 16, 2009, Dreibelbis was conducting an auction on private property in Franklin, Pennsylvania on behalf of True Blue. While Dreibelbis was videotaping the auction, defendants Robert Scott Foster and Kevin Lewis (the "officers"), ordered Dreibelbis to remove an auction sign that was about seventy-five yards from the auction site. Dreibelbis left the video camera on during the interaction (which took place on a public sidewalk), and the officers told him he would be arrested if he did not stop videotaping them. Dreibelbis stopped videotaping at that time, and also "curtailed some of his videotaping the rest of the auction that day and the next day because he was concerned he would be arrested for doing so." Appendix ("App.") 20.

The plaintiffs filed suit alleging that in threatening to arrest Dreibelbis for videotaping, the officers violated their First Amendment rights. The officers moved to dismiss the amended complaint, arguing in part that they were entitled to qualified immunity. The Magistrate Judge agreed, explaining in her Report and Recommendation that "[g]iven the uncertainty in the case law and the lack of authority from the Third

2

Circuit, this Court is unable to rule as a matter of law that there was a clearly established right to videotape a police officer at the time Defendants instructed Plaintiff to stop videotaping them." App. 12. The District Court adopted the Report and Recommendation as its opinion and dismissed the case. The plaintiffs now appeal.

## II.[1]

The only issue we must determine on appeal is whether the District Court correctly concluded that the officers were entitled to qualified immunity, and therefore could not be subject to liability for damages under 42 U.S.C. § 1983. In determining whether to apply qualified immunity, "we ask: (1) whether the facts alleged by the plaintiff show the violation of a constitutional right, and (2) whether the law was clearly established at the time of the violation." Kelly v. Borough of Carlisle, 622 F.3d 248, 253 (3d Cir. 2010). In the process of determining whether a right was clearly established, we "must consider the state of the existing law at the time of the alleged violation and the circumstances confronting the officer to determine whether a reasonable state actor could have believed his conduct was lawful." Id.[2] Thus, we must determine whether the Magistrate Judge was correct to conclude that as of October 16, 2009, Dreibelbis had no clearly established constitutional right to videotape the officers without threat of arrest.

---

[1] The District Court had jurisdiction pursuant to 28 U.S.C. § 1331, and we have appellate jurisdiction under 28 U.S.C. § 1291. We exercise plenary review of a district court's order granting a motion to dismiss. Fowler v. UPMC Shadyside, 578 F.3d 203, 206 (3d Cir. 2009).

[2] In 2009, the Supreme Court held that it is permissible for a district court to assess whether the law is clearly established before deciding if a constitutional right has been violated at all. Pearson v. Callahan, 555 U.S. 223, 236 (2009).

3

The Report and Recommendation relied principally on Kelly, a 2010 case addressing an issue similar to the one we face today. In that case, a police officer pulled over a car for a routine traffic stop. The plaintiff was riding in the passenger seat and recorded the stop with a small handheld video camera held in his lap. 622 F.3d at 251. The officer noticed the camera and then went back to the patrol car to call an assistant district attorney to obtain advice on whether he could arrest Kelly for violation of the Pennsylvania Wiretapping and Electronic Surveillance Control Act. After being advised that an arrest was appropriate, the officer arrested Kelly. Id. at 252. Kelly brought claims pursuant to 42 U.S.C. § 1983 under the Fourth and First Amendments. At the outset, we explained that "[w]e have not addressed directly the right to videotape police officers." Id. at 260. We also reiterated our previous comment that "videotaping or photographing the police in the performance of their duties on public property may be a protected activity." Id. (emphasis added in Kelly) (quoting Gilles v. Davis, 427 F.3d 197, 212 n.14 (3d Cir. 2005)). Though acknowledging that "[i]n determining whether a right is clearly established, it is not necessary that the exact set of factual circumstances has been considered previously," id. at 259, we surveyed case law from various courts and concluded that there was no clearly established right to videotape police officers during a traffic stop. Id. at 262.

First, the plaintiffs argue that even if Kelly held that there was no clearly established right to videotape police officers during a traffic stop, there was nevertheless a clearly established right to tape police officers on a public sidewalk during the course of their duties. Pl. Br. 12-13 (citing Kelly, 622 F.3d at 262 (distinguishing other First

4

Amendment cases based on inherently dangerous nature of traffic stops)).[3]  Even if the distinction between traffic stops and public sidewalk confrontations is as meaningful as the plaintiffs claim, such that Kelly is not dispositive, the plaintiffs are simply incorrect in claiming that "[e]very court has ruled there is a First Amendment right to videotape police in non-traffic stops situations in public forums."  Pl. Br. 23.  Instead, as Kelly clearly explained, courts have come to divergent conclusions on the issue.

The district court in Robinson v. Fetterman, 378 F. Supp. 2d 534 (E.D. Pa. 2005), addressed a situation in which a plaintiff had been arrested for videotaping state troopers performing truck inspections.  Noting that "[v]ideotaping is a legitimate means of gathering information for public dissemination," the court held that "there can be no doubt that the free speech clause of the Constitution protected Robinson as he videotaped the defendants."  Id. at 541.

Yet district courts in our circuit have several times come to the opposite conclusion.  For instance, in Pomykacz v. Borough of West Wildwood, 438 F. Supp. 2d 504 (D.N.J. 2006), the plaintiff had been arrested for stalking after taking photographs of town officials, and the court denied the defendants' summary judgment motion after finding sufficient evidence that the photographs were taken based on public concern.  Yet in response to the plaintiff's "blanket assertion" that observation of public officials is

---

[3] The plaintiffs also devote much of their argument to the Kelly district court's opinion entered after the case was remanded, see  Kelly v. Borough of Carlisle, 815 F. Supp. 2d 810 (M.D. Pa. 2011), arguing that unlike with a traffic stop, there is no reasonable expectation of privacy on a public sidewalk.  The argument is inapposite — because our Court had already determined the First Amendment question, the district court's second opinion addressed only the plaintiff's Fourth Amendment claim.

protected by the First Amendment, "[t]he Court [did] not necessarily agree," arguing that "the act of photographing, in the abstract, is not sufficiently expressive or communicative and therefore not within the scope of First Amendment protection—even when the subject of the photography is a public servant." Id. at 513 n.14 (also reiterating the Court's statement in Gilles that videotaping "may be a protected activity"); see also Snyder v. Daugherty, 899 F. Supp. 2d 391, 413-14 (W.D. Pa. 2012) ("There is no clearly established, 'unfettered' constitutional right, in generalized terms, under the First, Fourth, or any other Amendment, to record police officers in the performance of their duties.").

Thus, our case law does not clearly establish a right to videotape police officers performing their official duties such that the officers here should have been on notice that Dreibelbis had a First Amendment right to film them. Accordingly, the District Court correctly concluded that the officers were entitled to qualified immunity.

### III.

For the reasons explained above, we will affirm the judgment of the District Court.